POE v. ATLAS-SOUNDELIER/AMERICAN TRADING & PROD. CORP.

[132 N.C. App. 472 (1999)]

ANTHONY POE, Plaintiff v. ATLAS-SOUNDELIER/AMERICAN TRADING & PRO-
DUCTION CORP., RANDALL FEAGIN d/b/a RANDY'S ELECTRICAL SERVICE,
SNYDER CORP. OF LEXINGTON, and RICHARD BRITT, Defendants

No. COA98-714

(Filed 2 March 1999)

### 1. Negligence— industrial accident—how accident happened—evidence insufficient

The trial court properly granted summary judgment for defendants in a negligence action which arose from an injury suffered while plaintiff was operating a mechanical die press. Plaintiff was unable to explain how the accident happened and thus to focus on the manner in which one or more of the defendants were negligent; the conflict in plaintiff's own evidence does not present a triable issue of fact.

### 2. Workers' Compensation— temporary employment service—coverage by manufacturer—not required

A negligence plaintiff was barred from pursuing a civil action against a manufacturer where he was employed by a temporary employment service, Mega Force; he was injured while operating a mechanical die press at the manufacturer's plant; and he settled his workers' compensation claim with Mega Force. Under the contract between the manufacturer and Mega Force, Mega Force was responsible for securing the necessary coverage to protect workers who might suffer loss from an industrial accident and the manufacturer was not required to also provide workers' compensation coverage. Moreover, plaintiff did not satisfy the standard of proof for intentional wrongdoing by the manufacturer because he was unable to explain how the accident occurred.

Appeal by plaintiff from summary judgment entered 19 February 1998 by Judge B. Craig Ellis in Scotland County Superior Court. Heard in the Court of Appeals 28 January 1999.

*Robert S. Hodgman & Associates, by Robert S. Hodgman and Todd P. Oxner, for plaintiff appellant.*

*Young Moore and Henderson, P.A., by Dana H. Davis; and Singleton, Murray, Craven & Inman, L.L.P., by Richard Craven, for defendant appellees Feagin and Snyder Corporation.*

POE v. ATLAS-SOUNDELIER/AMERICAN TRADING & PROD. CORP.

[132 N.C. App. 472 (1999)]

*Dean & Gibson, by Rodney Dean and Kimberly A. Gossage, for defendant appellees Atlas-Soundelier/American Trading & Production Corp., and Richard Britt.*

HORTON, Judge.

Plaintiff Anthony Poe was one of approximately 100 temporary employees supplied to defendant Atlas-Soundelier/American Trading & Production Corporation (Atlas-Soundelier) by defendant Mega Force Temporary Services, Inc. (Mega Force), in August of 1993. On 6 August 1993, plaintiff was operating a mechanical die press at Atlas-Soundelier's Laurinburg plant when his left hand was crushed in the press. On 31 July 1996, plaintiff instituted an action in Cumberland County (later removed to Scotland County) against Mega Force; Atlas-Soundelier; E. G. Heller's Son, Inc., the manufacturer of the die press; Snyder Corporation, which supervised the installation of the die press; Randall Feagin, d/b/a Randy's Electrical Service (Feagin), who did electrical work involved with the installation of the die press; and Richard Britt, plaintiff's supervisor at Atlas-Soundelier. E. G. Heller's Son, Inc., is no longer a party to this lawsuit. Plaintiff has settled with Mega Force. Summary judgment in favor of all the remaining defendants was entered on 18 February 1998, and plaintiff appealed, contending there were "genuine issue[s] of material fact supporting numerous triable issues." We disagree, and affirm the judgment of the trial court.

In the spring of 1993, defendant Atlas-Soundelier moved a number of machines from its Fresno, California, plant to its Laurinburg plant. The Heller-Sutherland mechanical power press (the press) involved in this accident was among those relocated. A trucking company disassembled, transported, and reassembled the press in Laurinburg. Atlas-Soundelier contracted with Snyder Corporation to hook up the electrical, air, and hydraulic systems as they had been in the Fresno plant. Snyder then contracted with Feagin to perform the actual hookup. While in use in Fresno, the press was operated either by a foot pedal or by hand buttons. Either the foot pedal or hand buttons could be utilized by merely plugging the device into an existing socket in the press. When the foot pedal was engaged or the hand buttons pressed by the operator, the press would perform a metal-stamping operation. As a safety measure, a light curtain was installed and positioned between the press operator and the areas where the metal blanks are stamped. The light curtain is made up of numerous vertical photoelectric cells which emit a steady light beam across the area

between the operator and the press. If the light beam is interrupted by any object, the press stops immediately and remains stopped until the object is removed from the beam of light. There was only nine and one-half inches of space between the light curtain and the area where the metal blanks were stamped out. After defendants Snyder and Feagin installed the hand controls and light curtain, the press was tested and was working properly. Thereafter, Atlas-Soundelier began using the foot control with the press rather than the hand controls because it increased operator efficiency. Atlas-Soundelier also installed a hand-held toggle switch and changed the use of the press from a one-step to a two-step operation. As modified by Atlas-Soundelier, the press operator was to feed a metal blank into the die on the left side using the toggle switch. The operator was then to activate the press by use of the foot switch. In order to prevent injury, the foot switch was enclosed in a metal box so that it could not be activated accidentally. The operator's foot had to be inserted into the metal box to depress the foot switch. After the press performed the first stamping operation, the worker was to move the metal blank to the right using tongs, insert a second metal blank on the left side, activate the press a second time with the foot pedal, and then remove the finished piece.

On 6 August 1996, plaintiff was assigned to work on the press when he reported to Atlas-Soundelier. Plaintiff had operated the press many times and produced some 25,000 finished pieces. No Atlas-Soundelier employee had ever been injured using the press. After plaintiff had produced about 100 pieces, the press came down on his hand and crushed it. Plaintiff was transported to a local hospital and treated after the accident. A blood alcohol test performed at the hospital one and one-half hours after the accident revealed a level of 0.097%.

On 31 July 1996 plaintiff filed a complaint in Cumberland County Superior Court, alleging negligence on the part of Snyder, Feagin, Heller and Britt; intentional misconduct on the part of Mega Force and Atlas-Soundelier; and breach of warranty against Heller. During the discovery stage, plaintiff testified in his deposition that he was operating the press in the normal fashion when it inexplicably malfunctioned and injured his hand. Plaintiff testified that he did *not* depress the foot pedal and was leaning *through* the light curtain when the press activated and injured him. Plaintiff's own expert witness agreed that the press was operating properly at the time of plaintiff's injury and could explain the injury only by assuming that plaintiff had

gotten between the light curtain and the press, and then somehow reached out with his foot and depressed the foot pedal. If plaintiff's testimony were true, plaintiff's expert could not explain the accident. In September of 1997 defendants filed motions for summary judgment. The trial court granted the motions on or about 18 February 1998. Plaintiff appeals.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. The burden is on the movant to show: (1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim. *Liller v. Quick Stop Food Mart*, Inc. 131 N.C. App. 619, 621, 507 S.E.2d 602, 604 (1998). In considering a motion for summary judgment, "the court must view the evidence presented by both parties in the light most favorable to the nonmoving party." *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 666, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995).

[1] Among other things, plaintiff has sued defendants for negligence. A *prima facie* case of negligence includes the following elements: (1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances. *Liller*, 131 N.C. App. at 621, 507 S.E.2d at 604.

The central difficulty with plaintiff's case is his inability to explain how the accident happened and thus to focus on the manner in which one or more of the defendants were negligent. In fact, many of plaintiff's allegations of negligence in his amended complaint and his brief before this Court are not supported by his own testimony or that of his expert witness. Further, the assumptions made by his expert witness contradict plaintiff's own deposition testimony. That conflict in plaintiff's own evidence does not present a triable issue of fact, however.

For example, as to defendant Britt, plaintiff's supervisor, plaintiff alleges in his brief that Britt "observed [plaintiff] standing between the light curtain and the press but chose not to warn [plaintiff] that he was placing himself in danger by doing so." Plaintiff testified, how-

ever, that he did not see Britt nearby at the time of the accident and did not believe that anyone else was near the press at that time. Both the testimony of Britt and employment records indicate that Britt was not even at work on the day in question. It appears that plaintiff has abandoned his appeal as to Britt. He makes no argument as to why summary judgment in favor of Britt ought to be reversed, and only mentions Britt in passing in his brief. "Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(5).

As to defendants Snyder and Feagin, the evidence suggests that the press was reconfigured properly by them and was working properly when their work was completed. The press was exhaustively inspected following plaintiff's tragic accident, but was working properly. Plaintiff is simply not able to forecast any evidence which would create a jury question as to these defendants. Further, when Snyder and Feagin completed their contract with Atlas-Soundelier, the press was operating with the hand controls and light curtain, exactly as it had been operated in Fresno. The use of the foot control, toggle switch, and the two-step operation were modifications made after their departure and without their involvement. Plaintiff's assignments of error as to summary judgment in favor of Snyder and Feagin are overruled.

[2] Plaintiff is also barred from pursuing a civil action against Atlas-Soundelier for two reasons: (1) § 97-10.1 (1991) (the exclusivity provisions) of the Workers' Compensation Act (the Act), and (2) plaintiff does not forecast enough evidence to satisfy the high standard for proving intentional misconduct under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). Although plaintiff seems to agree that Atlas-Soundelier was a co-employer with Mega Force, and plaintiff has settled his workers' compensation claim with Mega Force, plaintiff contends that he is entitled to bring a tort action grounded in ordinary negligence against Atlas-Soundelier on the grounds that Atlas-Soundelier did not provide him with workers' compensation coverage as required by law. He argues that simply because Mega Force insured him, Atlas-Soundelier was not excused from providing similar coverage. We disagree.

Section 97-9 of the Act provides:

> Every employer subject to the compensation provisions of this Article shall *secure* payment of compensation to his employees in the manner hereinafter provided; and while such security

POE v. ATLAS-SOUNDELIER/AMERICAN TRADING & PROD. CORP.

[132 N.C. App. 472 (1999)]

remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified.

(Emphasis added.) As an employer, Atlas-Soundelier secured payment of compensation to plaintiff under the terms of its contract with Mega Force. Mega Force was a temporary employment service which employed workers and paid their taxes, unemployment, and other benefits including workers' compensation coverage. Mega Force supplied workers, including plaintiff, to Atlas-Soundelier. At the Laurinburg plant, plaintiff worked under the supervision of other Atlas-Soundelier employees, who controlled the details of his work. This Court has recognized the "special employment" or "borrowed servant" doctrine which holds that under certain circumstances a person can be an employee of two different employers at the same time. *Brown v. Friday Services, Inc.*, 119 N.C. App. 753, 759, 460 S.E.2d 356, 360, *disc. review denied*, 342 N.C. 191, 463 S.E.2d 234 (1995); *see also* 3 Arthur Larson, *Larson's Workers' Compensation Law* § 48.00 (1991). Plaintiff contends that the provisions of N.C. Gen. Stat. § 97-93 (1991) required Atlas-Soundelier also to provide workers' compensation coverage for plaintiff, and that because it failed to do so, it is liable to plaintiff "either for compensation under this Article or at law at the election of the injured employee." N.C. Gen. Stat. § 97-94(b) (1991). Plaintiff argues that Atlas-Soundelier did not "secure the payment of compensation" as required by the Act. We do not agree.

Under the contract between Atlas-Soundelier and Mega Force, the temporary service was responsible for securing the necessary coverage to protect workers who might suffer loss from an industrial accident. Mega Force carried out its responsibilities and plaintiff has settled with its carrier to receive benefits due him under the Act. A similar situation was before this Court in *Brown*. The plaintiff in *Brown* was sent by a temporary service to work for a roofing contractor and was injured on the job. The temporary worker then sued the temporary agency, the roofing contractor and the general contractor. We found that the injured worker in *Brown* was employed by both the temporary agency and by the roofing contractor. As such, " 'joint employer status does not provide an injured plaintiff-employee with two recoveries; rather, it merely provides two potential sources of recovery.' Therefore, once recovery is obtained under the statutory mechanism of workers' compensation, the plaintiff is barred from proceeding against either of his employers at common

law." *Brown*, 119 N.C. at 759, 460 S.E.2d at 360 (citation omitted). The exclusivity provisions of the Act state:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

N.C. Gen. Stat. § 97-10.1 (1991). Thus, any tort suit against the roofing contractor was barred by the exclusivity provisions of the Act. *Brown*, 119 N.C. App. at 760, 460 S.E.2d at 361.

Plaintiff is simply unable, after voluminous discovery efforts, to explain how the accident occurred and to point to any instance of actionable negligence by any of the defendants. In light of our conclusion, we need not reach defendants' argument that plaintiff was guilty of contributory negligence because of his high blood alcohol reading. Since plaintiff is unable to prove a *prima facie* case of negligence, we find that plaintiff is unable to satisfy the higher standard of *Woodson*, which would require proof of intentional wrongdoing by Atlas-Soundelier.

Affirmed.

Judges WYNN and EDMUNDS concur.