GREGORY v. PEARSON

[224 N.C. App. 580 (2012)]

AFFIRMED.

Judges McGEE and BEASLEY concur.

Judge Beasley concurred in this opinion prior to 18 December 2012.

———

SHEILA GREGORY, Administratrix of the Estate of TRAVIS BRYAN KIDD
v.
BARRY BLAINE PEARSON, in his individual capacity
SHEILA GREGORY, Administratrix of the Estate of TRAVIS BRYAN KIDD
v.
CLEVELAND COUNTY, Self-McNeilly Solid Waste Management Facility

No. COA12-742
No. COA12-813

Filed 31 December 2012

**Workers' Compensation—exclusivity—temporary staffing— expressly not an employee—no implied contract**

Plaintiff's negligence claims were not barred by the exclusivity provisions of the Workers' Compensation Act where plaintiff's decedent, who worked for a temporary employment agency, was not a County employee under the express language of the agree-

GREGORY v. PEARSON

[224 N.C. App. 580 (2012)]

ment between the agency and the County. Because the County chose not to establish an employment relationship with decedent, it eschewed both the liabilities and protections of the Workers' Compensation Act.

Appeals by Sheila Gregory from order entered on 23 March 2012 by Judge Richard Doughton in Cleveland County Superior Court. Heard in the Court of Appeals 29 November 2012.

*James M. Roane III for plaintiff-appellant.*

*Teague Campbell Dennis & Gorham, L.L.P., by William A. Bulfer and Rebecca Rausch, and Womble Carlyle Sandridge and Rice, by Sean F. Perrin and Jackson Price, for defendant-appellees.*

HUNTER, JR., Robert N., Judge.

Sheila Gregory, in her capacity as administratrix of the estate of Travis Bryan Kidd, appeals from a 23 March 2012 order dismissing her cases against Barry Blaine Pearson and Cleveland County (collectively, "Defendants"). Her appeals have been consolidated for review by this Court. Upon review, we reverse the trial court's order.

## I. Facts & Procedural History

Travis Bryan Kidd ("Kidd") was twenty-four years old and lived with his mother, Sheila Gregory ("Plaintiff"). Kidd was employed by WorkForce Staffing, Inc. ("WorkForce"), a temporary employment agency. WorkForce contracted with Cleveland County (the "County") to send temporary workers to the County's Self-McNeilly Solid Waste Management Facility (the "Landfill").

WorkForce and the County entered into a Staffing Vendor Agreement (the "Staffing Vendor Agreement" or the "Agreement"). Under the terms of the Agreement, the County regularly paid WorkForce, and WorkForce in turn paid its temporary workers. The Agreement stated WorkForce was responsible for workers' compensation insurance. According to the Agreement, the County could terminate the workers from the Landfill at any time. The Agreement expressly stated the temporary employees were not employees of the County.

WorkForce subsequently assigned Kidd to work at the Landfill as a "spotter," helping dump trucks and other vehicles navigate the terrain. The Landfill provided Kidd with protective equipment, including

gloves and a reflective orange vest. While Kidd worked at the Landfill, he did not take any other assignments from WorkForce.

On or about 22 February 2010, Kidd was working as a spotter at the Landfill. Barry Blaine Pearson ("Pearson"), a full-time County employee, was driving a mobile trash compactor near Kidd, despite Landfill policies requiring a 20-foot buffer between trash compactors and spotters. Also, the trash compactor's "backup camera" did not provide adequate visibility. This defect had resulted in previous collisions with other equipment. On that day, Pearson accidentally ran over Kidd with the trash compactor, driving him into a pile of trash. A few minutes later, another truck driver noticed Kidd lying in the trash pile. That driver approached, saw Kidd was severely injured but still alive, and called EMS. Although EMS extracted Kidd and took him to a hospital, he died that same day as a result of the injuries he received.

After Kidd's death, Plaintiff filed a workers' compensation claim with the North Carolina Industrial Commission against WorkForce. She collected from WorkForce all her entitled benefits under the North Carolina Workers' Compensation Act (the "Workers' Compensation Act").

On 19 August 2011, Plaintiff filed a Complaint against Pearson in Cleveland County Superior Court alleging (i) negligence; and (ii) wrongful death. On 21 February 2012, Plaintiff also filed a companion complaint against Cleveland County for (i) negligence; (ii) negligence *per se* (due to alleged statutory health and safety violations at the Landfill); and (iii) wrongful death.

On 6 March 2012, the County filed a motion to dismiss under North Carolina Rule of Civil Procedure 12(b)(1). After a hearing, the trial court dismissed both Plaintiff's complaints on 23 March 2012 because Plaintiff's allegations were exclusively covered by the Workers' Compensation Act. Plaintiff filed timely notice of appeal on 10 April 2012.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction to hear the instant appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2011). "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction *de novo* and may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own

judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## III. Analysis

Plaintiff contends her claims are not barred by the exclusive remedy of the Workers' Compensation Act because Kidd was not a County employee. Specifically, she argues: (i) the express contract between WorkForce and the County stated Kidd was not a County employee; (ii) the County did not exercise control over Kidd's work; and (iii) the "special employment" doctrine has a decreased burden of proof. Upon review, we reverse the trial court's order.

Under the Workers' Compensation Act, employers generally must "pay . . . compensation [to employees] for personal injury or death by accident arising out of and in the course of [employees'] employment." N.C. Gen. Stat. § 97-3 (2011). "No contract or agreement, written or implied, no rule, regulation, or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by this Article, except as herein otherwise expressly provided." N.C. Gen. Stat. § 97-6 (2011).

The Workers' Compensation Act provides an exclusive remedy for unintentional work-related injuries. *See* N.C. Gen. Stat. § 97-10.1 (2011) ("If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee . . . exclude all other rights and remedies of the employee . . . as against the employer at common law or otherwise on account of such injury or death."). Thus, the remedial provisions of the Workers' Compensation Act bar other claims against an employer, such as negligence. *See, e.g., Reece v. Forga*, 138 N.C. App. 703, 706, 531 S.E.2d 881, 883 (2000) (barring a negligence claim against an employer when the employee already recovered under the Workers' Compensation Act).

Similarly, an employee who recovers under the Workers' Compensation Act cannot raise a negligence claim against a co-employee acting in the scope of employment. *See Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985) ("We also have interpreted the Act as foreclosing a worker who is injured in the course of his employment from suing a co-employee whose negligence caused the injury."); *Strickland v. King*, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977) ("[A]n employee subject to the Act whose injuries arise out of and in the course of his employment may not

maintain a common law action against a negligent co-employee."); *Altman v. Sanders*, 267 N.C. 158, 161, 148 S.E.2d 21, 24 (1966).

According to the Workers' Compensation Act, "[t]he term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." N.C. Gen. Stat. § 97-2(2) (2011). Furthermore, under the "special employment" doctrine:

> "a general employee of one [employer] can also be the special employee of another while doing the latter's work and under his control [citation omitted] [a]nd it goes without saying that if a loaned servant is the borrower's servant also when doing the borrower's work and under his control, a servant especially hired for that very purpose is likewise."

*Brown v. Friday Services, Inc.*, 119 N.C. App. 753, 759, 460 S.E.2d 356, 360 (1995) (quoting *Henderson v. Manpower of Guilford Cnty., Inc.*, 70 N.C. App. 408, 413, 319 S.E.2d 690, 693 (1984)) (second and third alterations in original). Thus, if N.C. Gen. Stat. § 97-10.1 bars an employee's suit against a general employer, it also bars suit against a "special employer."

In *Collins v. James Paul Edwards, Inc.*, this Court established a three-part test to determine when the "special employment" doctrine applies:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

21 N.C. App. 455, 459, 204 S.E.2d 873, 876 (1974) (quotation marks and citation omitted); *see also Anderson v. Demolition Dynamics,*

*Inc.*, 136 N.C. App. 603, 607, 525 S.E.2d 471, 473 (2000) (applying the *Collins* test).

As Defendants describe, this Court has previously applied the *Collins* test to determine employees of temporary employment agencies may also become "special employees" of the businesses where they are assigned, barring non-workers' compensation claims against their "special employers." For instance, in *Brown*, a temporary worker fell through a skylight and died while working for a roofing contractor. *Brown*, 119 N.C. App. at 754-55, 460 S.E.2d at 358. The worker's estate brought a wrongful death claim against the roofing contractor. *Id.* at 755, 460 S.E.2d at 358. There, this Court affirmed dismissal of the case because the circumstances satisfied all three parts of the *Collins* test. *Id.* at 759, 460 S.E.2d at 360.

In *Poe v. Atlas-Soundelier/American Trading and Production Corp.*, 132 N.C. App. 472, 512 S.E.2d 760 (1999), a temporary worker's hand was crushed by a machine while working for Atlas. *Id.* at 473, 512 S.E.2d at 761. The plaintiff recovered workers' compensation from his temporary employment agency, but also brought a negligence claim against Atlas. *Id.* at 476, 512 S.E.2d at 763. In that case, this Court again applied the "special employment" doctrine to determine the exclusivity provisions of the Workers' Compensation Act barred Poe's negligence claim. *Id.* at 478, 512 S.E.2d at 764.

In *Henderson*, 70 N.C. App. 408, 319 S.E.2d 690, a temporary worker was injured by a falling tree while working for a construction company. *Id.* at 409, 319 S.E.2d at 691. There, we held both the temporary employment agency and the construction company were liable for workers' compensation because they were both Henderson's employers under the "special employment" doctrine. *Id.* at 410, 319 S.E.2d at 691.

In the present case, Plaintiff contends the exclusivity provisions of the Workers' Compensation Act do not bar her cases because Kidd was not a County employee. Plaintiff argues the circumstances do not satisfy the first prong of the *Collins* test because the Agreement stated Kidd was not a County employee. We agree.

Under the first portion of the *Collins* test, we consider whether "the employee has made a contract of hire, express or implied, with the special employer." *Collins*, 21 N.C. App. at 459, 204 S.E.2d at 876. In this analysis, we may examine the contract between a temporary employment agency and the business hiring temporary workers. *See*

*Brown*, 119 N.C. App. at 760, 460 S.E.2d at 360-61; *Poe*, 132 N.C. App. at 477, 512 S.E.2d at 763.

Here, the Staffing Vendor Agreement expressly stated temporary employees are not employees of the County. Significantly, none of the cases cited by Defendants contain a similar contractual provision. In fact, we have discovered no North Carolina workers' compensation case involving a temporary employment agency with this type of contractual language. Therefore, we distinguish the instant case from *Brown*, *Poe*, and *Henderson* based on this contractual provision.

We are further guided by *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 677 S.E.2d 485 (2009). In *Shelton*, the plaintiff was an employee of Drew, LLC ("Drew"), a cleaning company. *Id.* at 407, 677 S.E.2d at 489. Steelcase, Inc. ("Steelcase"), contracted for Drew to clean its maintenance area. *Id.* The plaintiff was injured by a falling fire door at Steelcase and sued Steelcase for negligence. *Id.* at 408, 677 S.E.2d at 490. In *Shelton*, this Court applied the *Collins* test to determine the plaintiff was not barred from bringing suit. *Id.* at 410-11, 677 S.E.2d at 491. Under the first prong of the *Collins* test, we concluded Shelton was not a "special employee" of Steelcase because the contract between Drew and Steelcase expressly stated Drew staff "will be employees of [Drew]," not Steelcase. *Id.* at 412, 677 S.E.2d at 492.

Similarly, because the Staffing Vendor Agreement expressly states the temporary workers are not County employees, we conclude the circumstances do not satisfy the first prong of the *Collins* test. "It is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962). Therefore, given the Agreement's express language, we decline to consider any implied contract between Kidd and the County.

The Agreement's language indicates the County intended to avoid workers' compensation liability by forming an independent contracting relationship with the temporary workers rather than an employment relationship. *See Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988) ("An independent contractor is not a person included within the terms of the Workers' Compensation Act."). For instance, the Agreement (i) expressly disavows an employment relationship, and (ii) requires WorkForce, rather than the County, to obtain workers' compensation insurance.

Because the County chose not to establish an employment relationship with Kidd, it eschews both the liabilities and protections of

GREGORY v. PEARSON

[224 N.C. App. 580 (2012)]

the Workers' Compensation Act. In this regard, we note the Workers' Compensation Act:

> seeks to balance competing interests and implement trade-offs between the rights of employees and their employers. It provides for an injured employee's certain and sure recovery without having to prove employer negligence or face affirmative defenses such as contributory negligence and the fellow servant rule. In return the Act limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damages awards in civil actions. [W]hile the employer assumes a new liability without fault he is relieved of the prospect of large damage verdicts.

*Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991) (alteration in original)(internal citation and quotation marks omitted). Having made a contract which allocated the risk of workers' compensation liability to WorkForce, the County may not now use the Workers' Compensation Act as a shield against the risk of "large damage verdicts" for civil tort liability. *Id.*

Since we determine the County did not form an employment relationship with Kidd, we reject Defendants' argument regarding the applicability of N.C. Gen. Stat. § 97-6. This statute states "[n]o contract . . . shall in any manner operate to relieve an employer . . . of any obligation created by this Article . . . ." N.C. Gen. Stat. § 97-6 (2011). The County argues this statute invalidates its contractual provision stating Kidd was not an employee. However, we hold N.C. Gen. Stat. § 97-6 does not apply here because the County was not Kidd's "employer."

Because the circumstances here do not satisfy the first prong of the *Collins* test, we conclude Kidd was not a "special employee" of the County. Consequently, the exclusivity provisions of the Workers' Compensation Act do not bar Plaintiff's suit and we reverse the trial court's order. Since we reverse the entire order based on Plaintiff's first argument, we decline to address her other arguments.

## IV. Conclusion

We conclude Plaintiff's claims are not barred by the exclusivity provisions of the Workers' Compensation Act because Kidd was not a County employee under the "special employment" doctrine. Consequently, the trial court's order dismissing Plaintiff's case is

Reversed.

Judges STROUD and BEASLEY concur.

Judge BEASLEY concurred prior to 17 December 2012.