CRYSTAL GAIL WOLFE, ADMINISTRATRIX OF THE ESTATE OF RICHARD PHILLIP WOLFE, PLAINTIFF v. WILMINGTON SHIPYARD, INCORPORATED AND WILLIAM W. MURRELL, JR., DEFENDANTS

No. COA98-1516

(Filed 7 December 1999)

**1. Jurisdiction— admiralty—injury on pier**

An action arising from an injury and death at a shipyard was not subject to admiralty jurisdiction and therefore barred by the federal statute of limitations where the injury occurred while the victim was attaching a repaired rudder to a tugboat; the sling used to attach the 2,200-pound rudder to a crane broke; the rudder fell to the pier, bounced, and briefly trapped the decedent, who then fell from the pier into the water; the sling was not part of the tugboat's gear and was not attached to the tugboat when it broke; the crane was on the pier and not the tug; and the decedent was standing on the pier when injured. Neither the tug nor its appurtenances caused the injury.

**2. Negligence— contributory—shipyard worker**

A negligence action arising from the injury and death of a shipyard worker was not barred as a matter of law by contributory negligence where defendant argued that the decedent was dangerously close to a sling being used to move a rudder, but

there was evidence that he had no reason to know that he was too close and a jury could reasonably find that the risk of danger would not be apparent to a reasonably prudent person and that decedent exercised due care for his safety.

**3. Employer and Employee— borrowed servant—shipyard worker**

The trial court did not err in a negligence action arising from an injury and death in a shipyard by granting plaintiff's motion for a directed verdict on whether a crane operator (Giles) was a borrowed servant of Hanover Towing (decedent's employer). Defendant Wilmington Shipyard is presumed to have retained the right to control Giles because the record contains no evidence that decedent (Wolfe) exercised actual control over the manner of Giles' performance and does not contain substantial evidence that Wolfe had the right to exercise this control.

**4. Evidence— deposition summaries—admitted as substantive evidence—limiting instruction not requested**

There was no reversible error in a negligence action arising from a shipyard accident where the trial court admitted deposition summaries as substantive evidence. A safety expert testified that he relied upon the depositions in forming his opinion and the summaries were admissible under Rule 703 for the limited purpose of demonstrating the facts upon which the expert relied. Defendants could not assign error to the admission of the summaries as substantive evidence because they did not request a limiting instruction at trial.

**5. Negligence— individual liability—injury in shipyard—shipyard president**

Defendant Murrell was entitled to a directed verdict on the issue of personal liability in an action arising from an injury and death at a shipyard at which he was president where expert testimony that management is responsible for implementing shipyard safety in the shipyard industry was not sufficient to support the conclusion that Murrell was personally responsible for overseeing and monitoring safety at Wilmington Shipyard.

Appeal by defendants from judgment filed 4 June 1998 and from orders filed 4 June 1998 by Judge Carl L. Tilghman in New Hanover County Superior Court. Heard in the Court of Appeals 5 October 1999.

*Ward and Smith, P.A., by John M. Martin and Ryal W. Tayloe, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., Paul K. Sun, Jr., and Gary R. Govert; and Marshall, Williams & Gorham, L.L.P., by Ronald H. Woodruff, for defendant-appellants.*

GREENE, Judge.

Wilmington Shipyard, Incorporated (Wilmington Shipyard) and William W. Murrell, Jr. (Murrell) (collectively, Defendants) appeal a judgment filed 4 June 1998 in favor of Crystal Gail Wolfe (Plaintiff), Administratrix of the Estate of Richard Phillip Wolfe, an order filed 4 June 1998 denying, in part, Defendants' motion for setoff, and an order filed 4 June 1998 denying Defendants' Rule 50 motion to set aside the verdict and Rule 59 motion for new trial.

Prior to trial, Defendants filed a motion to dismiss Plaintiff's claim on the ground it was subject to federal jurisdiction under the Admiralty Extension Act, 46 U.S.C. § 740 (1994), and was therefore barred by a three-year statute of limitations, 46 U.S.C. § 763(a) (1994). The trial court denied Defendant's motion.

The case then went to trial, and the evidence showed that in 1992, Wilmington Shipyard, a ship repair business, shared a location, office space, and staff with Hanover Towing, Inc. (Hanover), a marine towing and barge company. Murrell was president of both companies. Richard Phillip Wolfe (Wolfe) worked as a Port Engineer for Hanover, where he supervised all repair work. When Wolfe needed assistance with a repair job, he would sometimes ask Gerald Murrell, an employee at Wilmington Shipyard, to provide an assistant from Wilmington Shipyard.

Around May of 1992, Wolfe was assigned to repair the rudders of the *Cathy G*, a tugboat docked at Hanover's pier. On 9 April 1992, after the rudder had been repaired, William Edward Giles (Giles), an employee of Wilmington Shipyard, was asked by his supervisor to assist Wolfe in re-attaching the rudder to the *Cathy G*. Giles worked as a welder and crane operator, and his role on that day was to operate the crane that was used to lift the rudder from off the pier. At the same time, Wolfe was to act as the rigger, attaching a wire rope sling (the sling) to the rudder. The rudder weighed 2,200 pounds.

Giles testified Wolfe hooked the sling to the rudder and Giles used the crane to lift the rudder about six-to-eight feet off the pier: the same sling was used previously to remove the rudder from the *Cathy G.* Approximately thirty seconds later, while Wolfe was standing about seven feet away from Giles, the sling broke and the rudder fell to the pier. The rudder bounced onto the pier and "toppled over," trapping Wolfe between a 55-gallon drum and the rudder. Wolfe then fell into the water and, after being pulled from the water by a co-employee, died at the scene of the accident.

Giles stated regarding his job duties that when he worked with Wolfe, Wolfe would "walk [him] through things" and then the two would perform the job accordingly. He stated Wolfe was "more or less [his] boss man," but Giles was on the job to use his skill and knowledge as a crane operator. Giles also stated with regard to the operation of the crane that "it was [his] call," and if he thought a procedure was unsafe he would not perform the procedure. Giles testified he was at all times working for and paid by Wilmington Shipyard.

Plaintiff's evidence tended to show Giles and Wolfe did not receive safety training for inspecting and using the sling, and a proper inspection would have revealed the sling was damaged. Giles testified that on the day of the accident Wolfe used the only available path to the *Cathy G*, never walked under the rudder, did not put himself in a "dangerous position," and should have been "safe" where he was standing.

Donald L. Chisler, an expert in shipyard safety, testified the role of the rigger is to "attach the load to the hook of the crane and to help ensure personnel are free of the lift in the swing radius of the crane." He also stated a safe distance from a 2,200 pound rudder that had been hoisted twelve feet into the air would be between twenty and twenty-five feet.

Murrell testified there was no reason for Wolfe to be standing only seven feet from the rudder as it was being hoisted, and that he could have been standing fifty feet away or could have been standing on the *Cathy G* itself.

Following the 9 April 1992 accident, the federal Occupational Safety and Health Administration (OSHA) conducted an investigation of Wilmington Shipyard's work site, and Wilmington Shipyard was subsequently cited for sixty OSHA violations, including 39 "serious" violations.

**WOLFE v. WILMINGTON SHIPYARD, INC.**

[135 N.C. App. 661 (1999)]

Raymond Powell Boylston, Jr. (Boylston), a safety consultant and expert in workplace safety, testified regarding OSHA safety and health standards for the shipyard industry and the OSHA violations committed by Wilmington Shipyard. Boylston testified, based on a report prepared by an OSHA investigator who had investigated Wilmington Shipyard, that Wilmington Shipyard's training violated OSHA standards. Boylston stated the sling used by Wolfe and Giles did not have the proper number of clamps on it, which demonstrated Wolfe and Giles had not been properly trained to use the sling. He stated Wolfe was performing his job on the date of the accident in the same way he had in the past and, while he did "put him[self] in harm's way, . . . that's the normal way the job was set up, and that's what he was supposed to do."

Boylston testified Wilmington Shipyard had a safety handbook which referred to a safety committee. The safety committee was to coordinate safety activities and inspections and, in some cases, perform inspections. Wilmington Shipyard informed the Navy in a 7 September 1984 letter that it held monthly safety meetings. James Sykes, a crane operator supervisor at Wilmington Shipyard, however, testified he did not recall any safety committee meetings taking place and stated there were no safety meetings for general employees. Richard Miles, the "number three man" at Wilmington Shipyard, similarly testified he did not recall attending any safety committee meetings.

Boylston stated that according to shipyard safety standards, the management of a company, including the president, is responsible for implementing a shipyard safety and health program. He also testified that Murrell stated in his deposition he was "not involved in safety" at Wilmington Shipyard.

Boylston based his testimony, in part, on the depositions of James Sykes, Richard Miles, and Gerald Murrell, and summaries of statements from those depositions were admitted into evidence over Defendants' objection. Defendants did not, however, request a limiting instruction.

At the close of evidence, the trial court denied Defendants' motion for a directed verdict finding Plaintiff was contributorily negligent and Murrell was not personally negligent, and granted Plaintiff's motion for a directed verdict finding Giles was not a borrowed servant of Hanover.

The trial court submitted to the jury, in pertinent part, the issues of whether Wolfe's death was "caused by the negligence of . . . Wilmington Shipyard," whether Wolfe's death was "caused by the negligence of . . . Murrell," and whether Wolfe was contributorily negligent.

The jury found Wolfe's death was caused by the negligence of Wilmington Shipyard and Murrell, and that Wolfe had not, by his own negligence, contributed to his death.

The issues are whether: (I) Plaintiff's claim was subject to admiralty jurisdiction; (II) Plaintiff's claim was barred because Wolfe was contributorily negligent as a matter of law; (III) Defendants presented sufficient evidence to submit to the jury the issue of whether Giles was a borrowed servant of Hanover; (IV) deposition summaries upon which Boylston based his opinion were improperly admitted as substantive evidence under Rule 703; and (V) Plaintiff presented sufficient evidence to submit to the jury the issue of whether Murrell was individually liable.

I

[1] Defendants argue Plaintiff's claim was subject to admiralty jurisdiction and therefore barred by the federal statute of limitations.[1] We disagree.

The Admiralty Extension Act (the Act) extends federal admiralty jurisdiction to "all cases of damage or injury . . . caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740. The Act applies when "a ship or its appurtenances . . . proximately cause[s] an injury on shore." *Pryor v. American President Lines*, 520 F.2d 974, 979 (4th Cir. 1975), *cert. denied*, 423 U.S. 1055, 46 L. Ed. 2d 644 (1976).

In this case, Wolfe was injured when the sling used to attach the rudder to the crane broke, causing the rudder to fall to the pier.

---

1. In this case, Defendants contend Plaintiff's claim was barred by the three-year statute of limitations for claims brought under the Admiralty Extension Act, 46 U.S.C. § 763(a), and, although Plaintiff's claim would be tolled under state law, N.C.R. Civ. P. 41(a), state tolling provisions do not apply to claims brought under this Act.

Plaintiff, however, argues that even if its claim is subject to federal admiralty jurisdiction, state tolling provisions nevertheless apply and Plaintiff's claim was therefore timely filed.

Because we hold Plaintiff's claim is not subject to admiralty jurisdiction, we need not address the issue of whether state tolling provisions apply to claims brought under this Act.

The sling was not part of the *Cathy G*'s gear, and was not attached to the *Cathy G* when it broke. Further, the crane used to hoist the rudder was located on the pier and not on the *Cathy G*, and Wolfe was standing on the pier when injured. Because neither the *Cathy G* nor any of its appurtenances caused Wolfe's injury, this case is not subject to admiralty jurisdiction under the Act. *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212-14, 30 L. Ed. 2d 383, 391-92 (1971) (claim not subject to admiralty jurisdiction under the Act when plaintiff was injured by a forklift used to load the ship, and the forklift was not "part of the ship's usual gear or . . . stored on board, . . . was in no way attached to the ship, . . . was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank").

II

**[2]** Defendants argue Plaintiff's claim was barred as a matter of law by Wolfe's contributory negligence. We disagree.

"[A] plaintiff's right to recover in a personal injury action is barred upon a finding of contributory negligence," *Cobo v. Raba*, 347, N.C. 541, 545, 495 S.E.2d 362, 365 (1998), and a plaintiff is contributorily negligent when he fails to use due care to protect himself from risk of injury if the risk would have been apparent to " 'a prudent person exercising ordinary care for his own safety,' " *id.* at 546, 495 S.E.2d at 365 (quoting *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) (citations omitted)); *Dunbar v. City of Lumberton*, 105 N.C. App. 701, 703, 414 S.E.2d 387, 388 (1992) (citing *Rosser v. Smith*, 260 N.C. 647, 653, 133 S.E.2d 499, 503 (1963) (citations omitted)). Further, a plaintiff is contributorily negligent as a matter of law, thereby entitling a defendant to a directed verdict, when "the evidence taken in the light most favorable to [the] plaintiff establishes [his] negligence so clearly that no other reasonable inferences or conclusions may be drawn therefrom." *Dunbar*, 105 N.C. App. at 703, 414 S.E.2d at 388 (citing *Hicks v. Food Lion, Inc.*, 94 N.C. App. 85, 90, 379 S.E.2d 677, 680 (1989) (citations omitted)).

In this case, Defendants argue Wolfe was contributorily negligent because he stood dangerously close to the sling. Although the record contains evidence a safe distance would have been twenty-to-twenty-five feet from the sling, and Wolfe was standing only seven feet from the sling, there is also evidence Wolfe did not know and had no reason to know that he was standing too close to the sling. The evidence shows, when viewed in the light most favorable to Plaintiff, Wolfe and

Giles never received any training regarding sling safety, including the proper place to stand when the sling was in use. Giles believed Wolfe never placed himself in a dangerous position on the day of the accident, and he testified Wolfe was standing in a safe place when the sling broke. Further, Wolfe used the only available route to reach the *Cathy G*, and the parties had previously used the same lift to move the same rudder without incident.

Because a jury could reasonably find, based on Plaintiff's evidence, that Wolfe exercised due care for his safety, and the risk of danger would not be apparent to a reasonably prudent person, the issue of contributory negligence was properly submitted to the jury.

### III

[3] Defendants argue the trial court erred by finding as a matter of law Giles was not a borrowed servant of Hanover.[2] We disagree.

A servant furnished by its employer to another party becomes the borrowed servant of that party when it has the right to control the servant regarding " 'not only the work to be done *but also . . . the manner of performing it.*' " *Harris v. Miller*, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994) (quoting *Weaver v. Bennett*, 259 N.C. 16, 28, 129 S.E.2d 610, 618 (1963) (citations omitted)); *see also Hodge v. McGuire and Fingleton v. McGuire*, 235 N.C. 132, 136-37, 69 S.E.2d 227, 230 (1952) (" 'servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out to the servant the work to be done, . . . supervises the performance thereof, . . . or gives him directions as to the details of the work and the manner of doing it' " (quoting 57 C.J.S. *Master and Servant* § 566, at 287-88 (1948))). The most significant factor to consider when making this determination is whether the party actually exercises control over the servant, but other factors include:

> whether the lent servant is a specialist, which employer supplies the instrumentalities used to perform the work, the nature of those instrumentalities, the length of employment, the course of dealing between the parties, [and] whether the temporary

---

2. The issue of whether Giles was a borrowed servant of Hanover arises because the Longshore and Harbor Workers' Compensation Act, U.S.C. tit. 33, ch. 18 (1994), which provides compensation for employees injured "upon the navigable waters of the United States," 33 U.S.C. § 903(a), provides the exclusive remedy for an employee injured by a co-employee when the injury is subject to the jurisdiction of this statute, 33 U.S.C. § 933(i).

WOLFE v. WILMINGTON SHIPYARD, INC.

[135 N.C. App. 661 (1999)]

employer has the skill or knowledge to control the manner in which the work is performed . . . .

*Harris*, 335 N.C. at 387-88, 438 S.E.2d at 736. Further, "[a]bsent evidence to the contrary, the original employer is presumed to retain the right of control." *Id.* at 338, 438 S.E.2d at 736 (citations omitted).

In this case, when Wolfe needed assistance with a repair job he would ask Gerald Murrell, an employee of Wilmington Shipyard, to provide someone. Giles would then be instructed by his supervisor at Wilmington Shipyard to assist Wolfe. Although Giles referred to Wolfe as "boss man," Giles retained control over the operation of the crane while working with Wolfe. Wolfe would tell Giles the general plan for the work to be done, but Giles would decide whether a particular activity was safe and, if he had safety concerns, would decline to perform the activity. Giles was on the job to use his skill and knowledge as a crane operator, and was at all times paid by Wilmington Shipyard.

A moving party is entitled to a directed verdict against the party bearing the burden of proof when, viewing the evidence in the light most favorable to the party bearing the burden of proof, there is no substantial evidence to support that party's claim. *Cobb v. Reiter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992). " '[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). Because the record contains no evidence Wolfe exercised actual control over the manner of Giles' performance, and does not contain substantial evidence that Wolfe had the right to exercise this control, Wilmington Shipyard is presumed to have retained the right to control Giles and Plaintiff was entitled to a directed verdict finding Giles was not a borrowed servant of Hanover.[3]

IV

[4] Defendants argue deposition summaries admitted into evidence under Rule 703 were improperly admitted as substantive evidence. We disagree.

---

3. The ownership of the instrumentality is one factor to consider when determining whether the operator of the instrumentality is a borrowed servant. *See Harris*, 335 N.C. at 388, 438 S.E.2d at 736. Defendants contend Hanover owned the crane used by Giles to assist Wolfe, but the record contains conflicting evidence regarding ownership of the crane. Even assuming Hanover did own the crane; however, ownership of the crane alone is insufficient evidence in this case to show Wolfe exercised control or had the right to exercise control over Giles' manner of work.

An expert may rely upon facts or data not otherwise admissible into evidence if they are the type "reasonably relied upon by experts in the particular field in forming opinions or inferences." N.C.G.S. § 8C, Rule 703 (1992). These facts or data, however, are admissible for the limited purpose of showing the basis for the expert's opinion, and not as substantive evidence. *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988).

In this case, Boylston testified he relied upon the depositions of James Sykes, Richard Miles, and Gerald Murrell when forming his expert opinion, and Plaintiff sought to admit into evidence, over the objection of Defendants, summaries of those depositions. Although these summaries were not admissible as substantive evidence, they were admissible under Rule 703 for the limited purpose of demonstrating to the jury facts Boylston relied upon when forming his opinion. Defendants' objection was therefore properly overruled. Further, as Defendants did not request a limiting instruction at trial, they cannot assign error to the admission of these summaries as substantive evidence. *Id.* (defendant not entitled to assign error to trial court's failure to provide limiting instruction for evidence admissible under Rule 703 when defendant objected to admission of evidence at trial but did not request limiting instruction).

V

**[5]** Defendants argue the issue of Murrell's individual liability should not have been submitted to the jury because the record contains no evidence of Murrell's personal liability.

While as a general rule an officer of a corporation is not liable for the torts of the corporation " 'merely by virtue of his office,' " *Records v. Tape Corp.*, 19 N.C. App. 207, 215, 198 S.E.2d 452, 457 (quoting 19 C.J.S. *Corporations* § 845, at 271 (1940)), *cert. denied*, 284 N.C. 255, 200 S.E.2d 653 (1973), an officer of a corporation "can be held personally liable for torts in which he actively participates[,]" even though "committed when acting officially," *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990) (citation omitted).

In this case, Boylston testified that in the shipyard industry, the management of a company is responsible for implementing a shipyard safety and health program and demonstrating a commitment to safety. Boylston further stated the management includes the president of the company. Plaintiff did not present evidence, however, that

in this case Murrell was personally responsible for implementing or monitoring the company's safety program. Further, Murrell stated in his deposition he was not personally involved in any safety aspect of the business at Wilmington Shipyard.

A defendant is entitled to a directed verdict when, viewing the evidence in the light most favorable to the plaintiff, there is no substantial evidence to support the plaintiff's claim. *Cobb*, 105 N.C. App. at 220-21, 412 S.E.2d at 111. " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 220, 412 S.E.2d at 111 (quoting *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted)). Because Boylston's testimony regarding general safety standards in the shipyard industry are not sufficient to support the conclusion that Murrell was personally responsible for overseeing and monitoring safety at Wilmington Shipyard, Murrell was entitled to a directed verdict on the issue of his personal liability. Accordingly, the trial court erred in denying this motion.

Defendants also assign error to the trial court's instruction to the jury that violation of an OSHA regulation is negligence per se, the admission of OSHA citations into evidence, and expert testimony regarding Wilmington Shipyard's violation of OSHA regulations; however, we do not address these arguments because they were not properly raised in the trial court. N.C.R. App. P. 10(b)(1) (appellants must make timely objection at trial to preserve question for appellate review); N.C.R. App. P. 10(b)(2) (appellants must raise objection to jury charge at trial).

In summary, there is no error in the judgment for Plaintiff against Wilmington Shipyard and the judgment against Murrell is reversed.

Reversed in part.

Judges WALKER and HUNTER concur.