DONNA W. TAFT, ADMINISTRATRIX OF THE ESTATE OF MICHAEL WAYNE PAUL, JR., PLAINTIFF
v.
BRINLEY'S GRADING SERVICES, INC., ISMAEL DOMINGUEZ AND THOMAS E. BRINLEY, SR., DEFENDANTS

No. COA12-790

Filed 5 February 2013

**1. Workers' Compensation—special employee—summary judgment improper**

The trial court erred in a wrongful death case by granting summary judgment to defendant Brinley's Grading based on the exclusivity provision of the Workers' Compensation Act under N.C.G.S. § 97-10.1. The evidence in the record gave rise to genuine issues of material fact regarding whether decedent, who was actually employed by a company other than Brinley's Grading, amounted to a "special employee" subject to the Workers' Compensation Act's exclusivity provision.

**2. Wrongful Death—vicarious liability—negligence—scope of employment**

The trial court erred in a wrongful death case by granting summary judgment to defendant Brinley's Grading on the issue of its vicarious liability for any negligence by defendant Dominguez. The evidence tended to show that Dominguez was acting within the scope of his employment and in furtherance of Brinley's Grading's business when the alleged negligence occurred, and evidence that Dominguez was forbidden from starting or otherwise operating the truck involved in the accident would not necessarily remove Dominguez from the course and scope of employment.

**3. Employers and Employees—negligent hiring, supervision, and retention—compliance with company policy—wrongful death—no actual or constructive notice**

The trial court did not err in a wrongful death case by granting summary judgment on plaintiff's claim that defendant Brinley's Grading was independently negligent by failing to reasonably supervise defendant Dominguez to ensure that he complied with the company's vehicle policy, reasonably trained Dominguez regarding the policy, and secured the company vehicles' keys in a manner that would prevent unqualified employees from accessing them. There was no evidence that Brinley's Grading had actual or constructive notice of Mr. Dominguez'

inherent unfitness regarding his duties or of prior negligence committed by Mr. Dominguez.

**4. Employer and Employee—implementation of company safety policies—supervision—no reasonable foreseeability**

The trial court erred in a wrongful death case by granting summary judgment in favor of defendant Brinley. There was no evidence that Brinley's role in implementation of the company's safety policies was negligent since there was no showing that Brinley should have reasonably foreseen that more supervision was required to prevent defendant Dominguez' deliberate violation of company policy.

Appeal by plaintiff from orders entered 4 January 2012 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 11 September 2012.

*Abrams & Abrams, P.A., by Douglas B. Abrams, Margaret S. Abrams, and Noah B. Abrams; and Taft, Taft & Haigler, P.A., by Thomas F. Taft, for plaintiff-appellant.*

*Bryant, Lewis & Lindsley, P.A., by David O. Lewis, for defendants-appellees Brinley's Grading Services, Inc. and Thomas E. Brinley, Sr.*

GEER, Judge.

Plaintiff Donna W. Taft, administratrix for the Estate of Michael Wayne Paul, Jr., appeals from the trial court's orders granting summary judgment to defendants Brinley's Grading Services, Inc. and Thomas E. Brinley, Sr. Plaintiff brought a wrongful death action based upon a workplace accident resulting in Mr. Paul's death. Plaintiff primarily argues on appeal that the trial court erred in granting summary judgment to Brinley's Grading on plaintiff's claims based on the exclusivity provision of the Workers' Compensation Act. *See* N.C. Gen. Stat. § 97-10.1 (2011). We agree that the evidence in the record gives rise to genuine issues of material fact regarding whether Mr. Paul, who was actually employed by a company other than Brinley's Grading, amounted to a "special employee" subject to the Workers' Compensation Act's exclusivity provision.

Because we also find that plaintiff presented sufficient evidence to defeat summary judgment of Brinley's Grading's vicarious liability for the acts of defendant Ismael Dominguez, we reverse the trial

court's order entering summary judgment for Brinley's Grading. We affirm the order granting summary judgment to Mr. Brinley.

Facts

On 14 February 2008, Mr. Paul was an employee of Pro-Tech Management & Equipment Services, Inc. and was working at Brinley's Grading's facility in Durham, North Carolina pursuant to an "Employee Leasing Agreement" between Pro-Tech and Brinley's Grading. At approximately 7:20 a.m., Mr. Paul was beside a large commercial trailer working to load it for travel to a worksite. At the same time, Mr. Dominguez, an employee of Brinley's Grading, started a Brinley's Grading pickup truck that was facing the trailer, put the truck in gear, and popped the clutch. The truck lunged forward and pinned Mr. Paul in between the front bumper of the truck and the trailer. As a result of the collision, Mr. Paul sustained injuries leading to his death.

On 26 January 2010, plaintiff filed a wrongful death action against Brinley's Grading, Mr. Brinley (the president of Brinley's Grading), and Mr. Dominguez asserting that Mr. Paul's death was the result of their negligence. On 31 March 2010, Brinley's Grading and Mr. Brinley filed an answer denying the material factual allegations of the complaint and asserting as defenses contributory negligence and the fellow servant doctrine. Mr. Dominguez, who left the scene immediately after the accident, did not file an answer, has not been located by the parties since the accident, and was never interviewed or deposed.

On 15 November 2011, Brinley's Grading filed a motion for summary judgment. Brinley's Grading contended that Mr. Paul was a "special employee" of Brinley's Grading and a fellow servant of Mr. Dominguez at the time of the accident and, therefore, plaintiff's claims were barred by the exclusivity provision of the Workers' Compensation Act set out in N.C. Gen. Stat. § 97-10.1 and the fellow servant doctrine. Brinley's Grading further argued that Ms. Taft could not show that Mr. Dominguez was acting within the scope of his employment, that Brinley's Grading was in any way negligent, or that any negligence was the proximate cause of Mr. Paul's death.

Also on 15 November 2011, Mr. Brinley filed a separate motion for summary judgment. Mr. Brinley argued that Ms. Taft could not show that Mr. Brinley was responsible for the day-to-day operations of Brinley's Grading, that Mr. Brinley was in any way negligent, that any negligence was the proximate cause of Mr. Paul's death, or that Mr. Brinley possessed actual or constructive knowledge of any dangerous

condition existing on the premises of the Durham facility where the accident occurred.

On 4 January 2012, the trial court entered an order granting summary judgment to Brinley's Grading and a separate order granting summary judgment to Mr. Brinley. Plaintiff timely appealed both orders to this Court.

## Discussion

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)).

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* We review a trial court's grant of summary judgment de novo. *Coastal Plains Utils., Inc. v. New Hanover Cnty.*, 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004).

## I

[1] Plaintiff first contends that the trial court erred in granting summary judgment to Brinley's Grading based on the exclusivity provision of the Workers' Compensation Act contained in N.C. Gen. Stat. § 97-10.1. N.C. Gen. Stat. § 97-10.1 provides:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

Under the Act, " 'employee' " is defined in part as "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ." N.C. Gen. Stat. § 97-2(2) (2011).

In addition to the definition of employee set out in the Workers' Compensation Act, our courts have adopted the "special employment" doctrine, which provides that, for purposes of the Workers' Compensation Act, "under certain circumstances a person can be an employee of two different employers at the same time." *Brown v. Friday Servs., Inc.*, 119 N.C. App. 753, 759, 460 S.E.2d 356, 360 (1995). When the special employment doctrine applies, the joint liability under the Act of the company that directly employs the employee (the "general" employer) and a second company (the "special" employer) provides the plaintiff-employee with two separate potential sources of workers' compensation benefits. *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009); *Brown*, 119 N.C. App. at 759, 460 S.E.2d at 360. However, under the special employment doctrine, the employee's receipt of workers' compensation benefits from either employer bars the employee from proceeding at common law against either of the employers. *Id.*

Defendants contend that the exclusivity provision applies to bar plaintiff's claims against Brinley's Grading because Mr. Paul qualified as an employee of both Pro-Tech and Brinley's Grading under the Workers' Compensation Act pursuant to the special employment doctrine, and plaintiff had already received workers' compensation benefits from Pro-Tech.

Our courts apply a three-prong test to determine whether the employee is a "special employee" for purposes of the Workers' Compensation Act's exclusivity provision:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for worker's compensation."

*Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 606, 525 S.E.2d 471, 473 (2000) (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67 (1999)). In addition, "[c]ontinuance of the 'general' employment is presumed, and the party asserting otherwise must make a 'clear demonstration that a new . . . employer [was] substituted for the old.'" *Id.* at 607, 525 S.E.2d at 473 (quoting *Larson's* § 67.02).

The first prong of the special employer test asks whether Mr. Paul entered into a contract for hire with Brinley's Grading. This Court has described the "contract requirement" as "crucial" because the application of the special employment doctrine results in the employee losing the right to sue the special employer at common law for negligence. *Id.*

In *Anderson*, the defendant—much like defendants here—argued that the first prong was established by evidence that the decedent "'expressly accepted'" employment with the defendant when, after being contacted by the defendant, he sought permission from the general employer to work at the defendant's site and then "'accepted that assignment'" by coming to the worksite. *Id.* at 608, 525 S.E.2d at 474. This Court held that "[t]hese actions standing alone do not conclusively satisfy the contract for employment prong of the special employer test." *Id.*

In concluding that issues of fact existed regarding the first prong, the Court went on to note other evidence including, among other things, that the decedent was paid by and insured through the general employer, although the defendant reimbursed the general employer for 40% of the decedent's salary, and the defendant neither paid payroll taxes on behalf of the decedent nor claimed him as an employee for insurance purposes. *Id.* Further, the decedent represented to third parties that he was an employee of the general employer. *Id.* The Court held that "[c]onsideration of all the above evidence in the light most favorable to plaintiff raises at a minimum a genuine factual issue as to the first prong of the special employer test, *i.e.*, whether there was an employment contract between defendant and decedent." *Id.* at 609, 525 S.E.2d at 474 (internal citation omitted).

Similarly, this Court concluded in *Shelton* that a jury issue existed as to the first prong. 197 N.C. App. at 412, 677 S.E.2d at 492. The

TAFT v. BRINLEY'S GRADING SERVS., INC.

[225 N.C. App. 502 (2013)]

defendant claimed that there was an implied employment agreement with the plaintiff because the plaintiff was hired by the general employer for the express purpose of working for the defendant, she had her own office at the defendant's plant, and she worked at the defendant's plant full time. *Id.* at 411, 677 S.E.2d at 492. This Court, however, concluded that the evidence was less compelling than the evidence found insufficient in *Anderson.*

In *Shelton,* the defendant had not contacted the plaintiff, but rather had entered into a contract with the general employer to provide cleaning services, and the general employer had chosen to provide those services by assigning the plaintiff to work for the defendant. *Id.* at 412, 677 S.E.2d at 492. The contract specifically provided that personnel supplied by the general employer to the defendant would " 'be employees of the [the general employer].' " *Id.* Further, the record contained evidence from witnesses identifying the plaintiff as an employee of the general employer and evidence that the general employer paid the plaintiff, withheld her taxes, was responsible for her workers' compensation insurance, and paid her benefits. *Id.*

This case is materially indistinguishable from *Shelton* and, like *Shelton,* less compelling than *Anderson.* Brinley's Grading argues that an implied contract existed between Mr. Paul and Brinley's Grading because Mr. Paul "accepted tasks assigned to him by Brinley's Grading on Brinley's Grading premises and under the direction and control of Brinley's Grading personnel and subject to Brinley's Grading regulations and guidelines." This contention is essentially identical to the argument rejected in *Anderson.*

Moreover, the Employee Leasing Agreement ("the Agreement") provided: "The parties understand that Pro-Tech is an independent contractor, and that all of the personnel assigned by Pro-Tech to Brinley's business in order to fill the relevant job positions are employees of Pro-Tech and only Pro-Tech." Further, under the Agreement, "Pro-Tech acknowledges that it is responsible for all matters related to the payment of federal, state and local payroll taxes, workers' compensation insurance, salaries and fringe benefits for its employees." Additionally, Pro-Tech was required by the Agreement to maintain its own general liability, professional malpractice, and automobile liability insurance for actions and omissions of leased Pro-Tech employees. Finally, in a Rule 30(b)(6) deposition for Brinley's Grading given by its president, Mr. Brinley, Brinley's Grading conceded that, pursuant to the Agreement, Mr. Paul was solely an employee of Pro-Tech.

Under *Anderson* and *Shelton*, this evidence was sufficient to give rise to an issue of fact on the first prong of the special employer test. *See also Gregory v. Pearson*, 224 N.C. App. 580, 586, 736 S.E.2d 577, 581 (2012) (holding first prong of special employer test not met based upon provision in contract between temporary employment agency and alleged special employer that "expressly stated temporary employees are not employees of the [alleged special employer]").

Turning to the third prong, *Anderson* observed that this prong, "control of the detail of the work, may be the most significant." 136 N.C. App. at 609, 525 S.E.2d at 474. The Court, in *Anderson*, noted that although the defendant's supervisor directed the decedent regarding what needed to be done, "no evidence was presented that the latter was told *how* to do the specific tasks assigned." *Id.* at 610, 525 S.E.2d at 475. Instead, evidence existed that the decedent was in charge of part of the work and not subject to the supervisor's control as to the details of his work, which the Court concluded was not sufficient to suggest such supervision and control as to justify implying that the decedent had consented to enter into a special employment relationship. *Id.* As a result, the Court concluded that rather than pointing to evidence justifying summary judgment for the defendant, the defendant had "at best . . . shown a genuine issue of material fact as to the third prong of the special employer test, defendant's control over the details of decedent's work." *Id.* at 611, 525 S.E.2d at 475.

In *Shelton*, this Court pointed out that the defendant's evidence simply showed that the defendant's managers identified what work needed to be done, but did not establish that the defendant had the right to tell the plaintiff how to go about completing the projects it assigned. 197 N.C. App. at 413, 677 S.E.2d at 493. "Even more significantly," however, "the contract between [the defendant] and [the general employer] specified in a provision entitled 'Supervision': '[The general employer] will be solely responsible for the direction and supervision of personnel assigned to the facility, except that maintenance supervisor shall direct the duties of two (2) employees assigned to his/her department' "—the latter proviso did not apply to the plaintiff. *Id.*

This Court pointed out: "As our Supreme Court has observed, '[e]mployment, of course, is a matter of contract. Thus, where the parties have made an explicit agreement regarding the right of control, this agreement will be dispositive.'" *Id.* (quoting *Harris v.*

*Miller*, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994)). The Court observed that the defendant "specifically chose to require, by contract, that [the general employer] be 'solely responsible for the direction and supervision' of [the plaintiff]. That contract provides sufficient evidence to warrant submission of the special employee issue to the jury. [The defendant] cannot blindly disregard its own contract in order to argue that no issue of fact existed for the jury to decide." *Id.* at 413-14, 677 S.E.2d at 493.

Here, the Agreement provided in relevant part:

> In order to carry out its obligations hereunder, Pro-Tech may designate one or more "on-site supervisors" from among the employees assigned to fill job positions for Brinley's. The on-site supervisors shall oversee administrative and managerial matters relating to Pro-Tech's leased employees and shall be under the direct supervision of the Pro-Tech management team. If Pro-Tech does not elect to designate on-site supervisors, Pro-Tech's leased employees who are assigned to Brinley's shall be responsible to the Pro-Tech management team. *The on-site supervisors or the management team shall determine the policies and procedures to be followed by Pro-Tech's leased employees regarding the time and performance of their duties. Brinley's shall cooperate with Pro-Tech in the formation of such policies and procedures and shall permit Pro-Tech to implement the same.*

(Emphasis added.)

The Agreement further provided:

> Brinley's expressly acknowledges, however, . . . Brinley's may *assist* in recruiting, hiring, evaluating, replacing, *supervising*, disciplining and firing Pro-Tech employees; however, *Pro-Tech shall retain ultimate control over such matters.*

(Emphasis added.)

Brinley's Grading thus chose to contractually agree that Pro-Tech, and not Brinley's Grading, would control and direct Mr. Paul's work. According to the Agreement, Brinley's Grading, at most, "assist[ed]" in personnel decisions, including supervision. Under *Shelton*, the Agreement is sufficient to create a genuine issue of material fact as to

the third prong. Brinley's Grading cannot obtain summary judgment by ignoring the terms of the contract into which it chose to enter.

Defendants, however, point to an affidavit by Chadwick Brinley, a vice-president of Brinley's Grading, which stated:

> At all times when performing work for [Brinley's Grading], [Mr. Paul] was under the sole direction, control and supervision of [Brinley's Grading] with regard to his assigned tasks. Such direction included the manner in which he was to perform his duties, the locations at which said duties were to be performed and the time within which such duties were to be performed.

While plaintiff argues that we should not consider Chadwick Brinley's affidavit because it contradicts the Rule 30(b)(6) deposition given by Brinley's Grading's president, we need not resolve that issue since this affidavit when juxtaposed with the Agreement, at most, raises an issue of fact. It cannot, in light of the Agreement, support summary judgment in Brinley's Grading's favor.

In sum, we hold that genuine issues of material fact exist regarding the first and third prongs of the special employment test. We, therefore, need not decide whether defendants have conclusively established the second prong. *See id.* at 411, 677 S.E.2d at 492 ("We need not address the second prong because [the defendant] has failed to establish that no issue of fact exists as to the first and third prongs[.]"); *Anderson,* 136 N.C. App. at 607, 525 S.E.2d at 473 ("For purposes of our ruling herein, we assume *arguendo* that the second prong of the special employer test has been met. However, we conclude the record reveals genuine issues of material fact as to the remaining prongs.").

Defendants nonetheless cite *Poe v. Atlas-Soundelier/Am. Trading & Prod. Corp.,* 132 N.C. App. 472, 512 S.E.2d 760 (1999), and *Brown* in support of their argument. In *Poe,* however, the plaintiff conceded that the defendant was a "co-employer" with the temporary employment agency that supplied him to the defendant. 132 N.C. App. at 476, 512 S.E.2d at 763. *Poe* addressed a different issue and is not applicable here.

*Brown* did not involve a contract between the general employer and alleged special employer with terms similar to those in this case and in *Shelton*—terms that specified that the worker was an

employee of the general employer and that the worker performed under the direction and supervision of the general employer. *See Brown*, 119 N.C. App. at 759-60, 460 S.E.2d at 360-61. *See also Gregory*, 244 N.C. App. at 586, 736 S.E.2d at 581 (distinguishing *Brown* because, unlike in *Brown*, contract at issue between general employer and alleged special employer in *Gregory* "expressly stated temporary employees are not employees of the [alleged special employer]"). Consequently, we conclude that summary judgment in favor of Brinley's Grading cannot be affirmed based upon N.C. Gen. Stat. § 97-10.1 and the special employment doctrine.

II

**[2]** Plaintiff next argues that the trial court improperly granted summary judgment to Brinley's Grading because, in the light most favorable to plaintiff, a genuine issue of material fact existed as to Brinley's Grading's vicarious liability for Mr. Dominguez' negligence under a theory of respondeat superior. Defendants contend that undisputed evidence shows that Brinley's Grading cannot be vicariously liable for Mr. Dominguez' alleged negligence in operating the truck because Mr. Dominguez was forbidden, by company policy, from operating any company vehicle. According to Brinley's Grading, Mr. Dominguez was, therefore, acting outside of the scope of his employment when the alleged negligence occurred.

Employers are liable for torts committed by their employees under a respondeat superior "theory when the employee's act is 'expressly authorized; . . . committed within the scope of [the employee's] employment and in furtherance of his master's business —when the act comes within his implied authority; . . . [or] when ratified by the principal.' " *Medlin v. Bass*, 327 N.C. 587, 592, 398 S.E.2d 460, 463 (1990) (quoting *Snow v. DeButts*, 212 N.C. 120, 122, 193 S.E. 224, 226 (1937)). "Thus, where the employee's action is not expressly authorized or subsequently ratified, an employer is liable only if the act is 'committed within the scope of . . . *and* in furtherance of [the employer's] business.' " *Id.* at 593, 398 S.E.2d at 463 (quoting *Snow*, 212 N.C. at 122, 193 S.E. at 226).

This Court has explained regarding the scope of employment:

"It is well settled in this State that [i]f the act of the employee was a means or method of doing that which he was employed to do, *though the act be unlawful and*

> *unauthorized or even forbidden*, the employer is liable
> for the resulting injury, but he is not liable if the
> employee departed, however briefly, from his duties in
> order to accomplish a purpose of his own, which pur-
> pose was not incidental to the work he was employed
> to do."

*Estes v. Comstock Homebuilding Cos.*, 195 N.C. App. 536, 545, 673 S.E.2d 399, 404-05 (2009) (emphasis added) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 491-92, 340 S.E.2d 116, 122 (1986)). Accordingly, "[p]erforming a forbidden act does not necessarily remove an employee from the course and scope of employment." *Id.* at 544, 673 S.E.2d at 404. *See also Johnson v. Lamb*, 273 N.C. 701, 707, 161 S.E.2d 131, 137 (1968) ("If an employee is neg-ligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of *respondeat superior*, notwithstanding the fact that the employer, himself, exercised due care in the supervi-sion and direction of the employee, *the employee's violation of instructions being no defense to the employer*." (emphasis added)).

In *Estes*, the Court affirmed the trial court's entry of partial sum-mary judgment for the plaintiff and against the defendant realty com-pany for damages to a model home caused when the company's employee failed to extinguish a cigarette she was smoking on the premises. 195 N.C. App. at 538, 544, 545, 673 S.E.2d at 401, 404, 405. The defendant contended that an issue of fact existed precluding summary judgment regarding whether its employee was permitted to smoke on the premises. *Id.* at 544, 673 S.E.2d at 404.

In rejecting this argument, this Court explained: "[W]hether [the employee] was permitted to smoke on the deck of the model home is not relevant to the analysis in this case. The issue here is whether [the employee] was in the scope of her employment, and about the busi-ness of her employer, when the negligent act occurred. Performing a forbidden act does not necessarily remove an employee from the course and scope of employment." *Id.* Summary judgment was proper because "(1) [the employee] was on the premises of her employer where she was required to be, able and willing to perform her duties; and (2) the negligence occurred when she went to perform one of those duties, answering the telephone." *Id.* at 541, 673 S.E.2d at 402.

Here, there is no dispute that Mr. Dominguez was employed by Brinley's Grading as a laborer and that Brinley's Grading owned the

truck, started by Mr. Dominguez, that caused the accident. A description of the accident was recorded in an "Employee Accident Report" and a "Vehicle Accident Report" completed by Chad Brinley as vice-president of Brinley's Grading.[1] According to the Vehicle Accident Report, "Edward Alston was late for work because of weather conditions. [Mr. Dominguez] took it upon himself to start the truck." The Employee Accident Report explained further that Mr. Paul "was loading pine straw on his trailer when [Mr. Dominguez] decided to start [the] truck that [Mr. Paul] parked in front of. As [Mr. Dominguez] started the truck it lunged forward from his foot slipping off the clutch we assume."

In addition, Shay Wingate, a North Carolina Department of Labor, Occupational Safety and Health Administration ("OSHA") inspector, prepared an OSHA inspection report following a fatality inspection of Brinley's Grading arising out of the accident.[2] Mr. Wingate arrived at the Brinley's Grading premises at approximately 8:30 a.m. on the morning of the accident, personally observed the accident location, and conducted interviews with Brinley's Grading employees. In the report, Mr. Wingate found that "the temperature was 30°F the day of the accident." He also found that "Mr. Paul was responsible for loading and delivering pine straw to the job sites the day of the inspection," other employees "were walking towards the back of the 53 foot trailer to unload bales of pine straw at the time of the accident," and a different employee "was standing on top of the goose neck trailer and was stacking the bales of pine straw directly above the victim."

---

1. Based upon Rule 30(b)(6) deposition testimony by Chad and Thomas Brinley, the Brinley's Grading Employee Accident Report and Vehicle Accident Report qualify as business records and, thus, are admissible under Rule 803(6) of the Rules of Evidence as exceptions to the hearsay rule. *See In re S.D.J.*, 192 N.C. App. 478, 482, 665 S.E.2d 818, 821 (2008) ("A qualifying business record is admissible when a proper foundation . . . is laid by testimony of a witness who is familiar with the . . . records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." (internal quotation marks omitted)).

2. The OSHA report was admissible under Rule 803(8)(c) of the North Carolina Rules of Evidence as a public record. *See Haymore v. Thew Shovel Co.*, 116 N.C. App. 40, 46, 446 S.E.2d 865, 869 (1994) (holding that trial court properly admitted OSHA report pursuant to Rule 803(8)); *Bolick v. Sunbird Airlines, Inc.*, 96 N.C. App. 443, 446, 386 S.E.2d 76, 77 (1989) (explaining that, although factual findings from official investigative reports are admissible under Rule 803(8)(c), "any hearsay contained in the report must also fall under one of the hearsay exceptions"), *aff'd per curiam*, 327 N.C. 464, 396 S.E.2d 323 (1990).

Viewed in the light most favorable to plaintiff, this evidence tended to show that Mr. Dominguez was on the premises of his employer, Brinley's Grading, during work hours, on a cold morning, when other employees, including other laborers, were engaged in the process of loading pine straw to be driven to work sites. Mr. Dominguez took it upon himself to start up a work truck because another employee was late to work. Thus, like the employee in *Estes*, Mr. Dominguez was "on the premises of h[is] employer where [he] was required to be" and appeared to be "able and willing to perform h[is] duties." *Id.*

Moreover, also like the evidence in *Estes*, the evidence here tended to show that Mr. Dominguez' alleged negligence occurred while he was performing his assigned duties of preparing for employees to drive to a work site. A reasonable juror could find that Mr. Dominguez was engaged in a " 'means or method of doing that which he was employed to do' " when the alleged negligence occurred. *Id.* at 545, 673 S.E.2d at 404 (quoting *Hogan*, 79 N.C. App. at 491, 340 S.E.2d at 122). Additionally, a reasonable juror could also find that Mr. Dominguez was acting in furtherance of Brinley's Grading's business when he started the truck.

Because this evidence tended to show that Mr. Dominguez was acting within the scope of his employment and in furtherance of Brinley's Grading's business when the alleged negligence occurred, evidence that Mr. Dominguez was forbidden from starting or otherwise operating the truck would "not necessarily remove [Mr. Dominguez] from the course and scope of employment." *Id.* at 544, 673 S.E.2d at 404. Accordingly, the trial court erred by granting summary judgment to Brinley's Grading on the issue of its vicarious liability for any negligence by Mr. Dominguez.

### III

[3] Plaintiff next argues that the trial court erred in granting summary judgment on plaintiff's claim that Brinley's Grading was independently negligent in failing to (1) reasonably supervise Mr. Dominguez to ensure that he complied with the company's vehicle policy; (2) reasonably train Mr. Dominguez regarding the policy; and (3) secure the company vehicles' keys in a manner that would prevent unqualified employees from accessing them. We disagree.

A claim for negligent hiring, supervision and retention is recognized in North Carolina when plaintiff proves:

"(1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) *either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision,* . . .; and (4) that the injury complained of resulted from the incompetency proved."

*Moricle v. Pilkington,* 120 N.C. App. 383, 386, 462 S.E.2d 531, 533 (1995) (quoting *Medlin,* 327 N.C. at 591, 398 S.E.2d at 462).

Thus, in order to survive defendants' motion for summary judgment, plaintiff must show some evidence of: (1) Mr. Dominguez' negligent act in attempting to start the truck; (2) Mr. Dominguez' inherent unfitness to perform his duty or prior acts of negligence by Mr. Dominguez; (3) actual or constructive notice to Brinley's Grading of Mr. Dominguez' inherent unfitness or prior negligence; and (4) Mr. Paul's death having resulted from Mr. Dominguez' negligent act.

We find plaintiff's failure to present any evidence of the third factor—actual or constructive notice to Brinley's Grading of Mr. Dominguez' inherent unfitness or prior negligence—dispositive. The record contains excerpts from the "BRINLEY'S GRADING SERVICE, INC. OCCUPATIONAL HEALTH AND SAFETY MANUAL" which, under the section heading "TRUCK DRIVERS, OPERATORS AND LABORERS HEALTH AND SAFETY RESPONSIBILITIES," provides:

> 6. Do not operate equipment for which you have not been trained or authorized. If you have questions about the safe operation of a machine, contact your supervisor immediately. *Under no circumstances should machines be used in an unsafe manner or with safety features missing, malfunctioning, or circumvented.*

In addition, under the section heading "HEALTH AND SAFETY RULES," the manual provides:

> • Driver License Requirements—All employees who drive a company vehicle must possess and be able to present a valid North Carolina driver's license. If an employee has had their driving privileges sus-

TAFT v. BRINLEY'S GRADING SERVS., INC.

[225 N.C. App. 502 (2013)]

pended or license revoked, The Company must be notified immediately.

. . . .

- Vehicle operators are responsible for knowledge of and compliance with all State and local laws and ordinances governing the use and operation of motor vehicles. . . .

- Before starting, make sure the vehicle is in safe operation condition before each trip. . . .

. . . .

- Only the assigned driver or other company personnel engaged in the course of their employment are permitted to drive company vehicles.

. . . .

- No employee is to check out keys to any Company Vehicle without prior authorization from the area manager at that particular Brinley shop. The area manager will designate one authorized driver per company vehicle at that shop and only that designated employee is to do his pre-inspection of his vehicle and be responsible for starting and moving this designated vehicle from its parking spot on the equipment lot at any time.

- Should any employee take it upon himself to procure the keys from the Key lock box and start or move any vehicle without specific authorization and direction from the area manager, it will be grounds for immediate termination of employment with Brinley's Grading Service, Inc., as this is a zero tolerance violation of Company Policy.

Mr. Brinley testified, in a Rule 30(b)(6) deposition, that the policies regarding the company's key lock box and the pairing of one driver to one vehicle were in place at the time of the accident. He further testified that because Mr. Dominguez did not have a license, Mr. Dominguez was not authorized to operate any Brinley's Grading vehicles.

Mr. Brinley also testified that all new Brinley's Grading hires, including laborers, are informed of the company vehicle policies, including the policy that "[o]nly this driver drives this truck. No one else drives this truck. No one else starts it. No one else moves it." Mr.

Brinley further testified that these vehicle policies are also "reiterated in our safety meetings each month." Chad Brinley likewise asserted, in an affidavit, that Mr. Dominguez "was expressly forbidden to operate any company vehicles."

In addition, Mr. Brinley testified he was not aware of any prior occasion on which Mr. Dominguez had started, or otherwise operated, any Brinley's Grading vehicle for any purpose. Moreover, Mr. Brinley testified that, to the best of his knowledge, this was the first time any unauthorized Brinley's Grading employee had attempted to operate a Brinley's Grading vehicle. In accordance with the policy, Chad Brinley testified that any person who violated the policy, either by operating a vehicle when not authorized to do so, or permitting another to operate a vehicle that the other was not authorized to operate, would be terminated immediately.

We, therefore, disagree with plaintiff's assertion that "[t]here is simply no evidence whatsoever that Defendant Dominguez was ever told that he was unauthorized to operate the subject motor vehicle." Moreover, plaintiff has pointed to no evidence that Mr. Dominguez was unaware of the company's vehicle policies.

Instead, plaintiff argues that "[t]here is no evidence that Defendant Dominguez was ever given the OSHA Manual or any other company manual. The manuals themselves come with forms in both English and Spanish for employees to sign to say that they have received the manual." Plaintiff further asserts that defendants "failed to produce a single record or document showing that Defendant Dominguez was ever furnished with this manual." However, plaintiff points to no evidence in the record, and we have found none, that supports plaintiff's claims that the Brinley's Grading manuals contained employee signature receipt provisions or, if they did, that Mr. Dominguez did not complete one. In any event, the record *does* contain evidence tending to show that Mr. Dominguez was made aware of the vehicle polices at the time of his hire, and we have found no evidence to the contrary.

Plaintiff, however, further argues: "Regardless of whether Defendant Dominguez was ever in fact told that he was not allowed to operate the vehicle, the undisputed fact is that he was able to obtain the keys for the vehicle when they were in the possession of Brinley's Grading, walk back to the truck, get inside the driver's seat of the truck, and start the truck during the start of the work day without anyone stopping him or preventing him from doing so." Mr. Brinley testified that Mr. Dominguez could have easily obtained the

keys to the truck from the company's lockbox without anybody seeing him. Plaintiff's argument implies that, by failing to more closely guard the lockbox, and then failing to stop Mr. Dominguez before he managed to start the vehicle, Brinley's Grading failed to adequately supervise Mr. Dominguez.

This court rejected a similar argument in *B. B. Walker Co. v. Burns Int'l Sec. Servs., Inc.*, 108 N.C. App. 562, 424 S.E.2d 172 (1993). There, the plaintiff appealed the trial court's grant of a directed verdict to the defendant employer on the plaintiff's claim for negligent supervision and retention. *Id.* at 566, 424 S.E.2d at 175. The defendant company had contracted with the plaintiff company to provide security guard services to the plaintiff. *Id.* at 564, 424 S.E.2d at 173. However, "[s]ubsequent to their assignment at plaintiff's manufacturing facility, the security guards supplied by defendant stole significant amounts of plaintiff's property, which the guards had been assigned to protect." *Id.*

On appeal, the plaintiff contended that "had the guards been properly or adequately 'supervised,' their thefts could have been prevented." *Id.* at 567, 424 S.E.2d at 175. The Court rejected that argument, reasoning that it "amount[ed] to no more than speculation that because defendant failed to adequately guard the guards, it was negligent." *Id.* The claim failed, the Court held, because there was no showing "that defendant should have reasonably foreseen that more supervision was required to prevent these deliberate criminal acts which were the cause of plaintiff's loss." *Id.*

As in *B. B. Walker Co.*, plaintiff has made no showing that Brinley's Grading should have reasonably foreseen that more supervision was required to prevent Mr. Dominguez' deliberate violation of company policy that resulted in Mr. Paul's death. As previously discussed, there is evidence tending to show Mr. Dominguez was aware of various company vehicle policies that forbid him from both accessing the keys to the truck and attempting to start the truck. Because the only evidence regarding enforcement of these policies tends to show that they had never before been violated, and particularly never before been violated by Mr. Dominguez, there was no evidence that Brinley's Grading had actual or constructive notice of Mr. Dominguez' inherent unfitness regarding his duties or of prior negligence committed by Mr. Dominguez. The trial court's grant of summary judgment to Brinley's Grading on this claim was, therefore, proper.

IV

**[4]** Finally, plaintiff argues that the trial court erred in granting summary judgment in favor of Mr. Brinley. Plaintiff specifically contends a genuine issue of material fact exists because there is evidence that Mr. Brinley "failed to ensure that policies and procedures regarding the use of his company's vehicles was effectively communicated to its employees, such as Defendant Dominguez, who were operating such trucks in furtherance of their duties for his company" and that Mr. Brinley "failed to ensure that there were any safeguards to prevent keys for vehicles being taken from employees who were not to operate vehicles under his company's policies." Plaintiff then reasons that "[b]y failing to provide these safeguards and ensure that his own regulations were being followed, Mr. Brinley was negligent . . . ."

"[A]s a general rule an officer of a corporation is not liable for the torts of the corporation 'merely by virtue of his office.' " *Wolfe v. Wilmington Shipyard, Inc.*, 135 N.C. App. 661, 670, 522 S.E.2d 306, 312-13 (1999) (quoting *United Artists Records, Inc. v. Eastern Tape Corp.*, 19 N.C. App. 207, 215, 198 S.E.2d 452, 457 (1973)). However, "an officer of a corporation 'can be held personally liable for torts in which he actively participates[,]' even though 'committed when acting officially.' " *Id.*, 522 S.E.2d at 313 (quoting *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990)).

In an affidavit, Mr. Brinley asserted that at the time of the accident he was not present at the Brinley's Grading Durham facility; he "was not responsible for directing or controlling the work of company employees being performed on the premises, including any work being performed by . . . Ismael Dominguez on behalf of the company on the premises"; he was "unaware of any actions taken by Ismael Dominguez on the premises"; and "[a]t no time prior to the accident did [he] have any information from any source of any unsafe or dangerous actions of Ismael Dominguez." Plaintiff points to no evidence contradicting this affidavit.

There is, however, some evidence that Mr. Brinley participated in the formation or implementation of the company safety policies at issue. Mr. Brinley testified that even though he had relinquished control of the company's day-to-day operations to the company's vice-presidents, Chad and Robby Brinley, Chad and Robby still met with Mr. Brinley to discuss "policies we might want or things we might want to update or things we might want to change or things along that line."

In addition, Mr. Brinley testified to the substance of Brinley's Grading's safety policies and then explained that it was company policy to hold safety meetings in which the policies were reiterated to employees. Regarding his own participation in those events, Mr. Brinley testified: "And I'm speculating on what goes on month to month, but these are the meetings when I handle them, which has been a number of years. But I have kind of passed on to [Robby] and Chad, so I'm sure that's what happens—reasonably sure." This evidence tended to show that, at the time of the accident, Mr. Brinley still participated in some company safety policy formation and that he had previously participated in the implementation of the company safety policies at issue.

Nevertheless, there is no evidence that Mr. Brinley's role in implementation of the company's safety policies was negligent. There is uncontradicted evidence that the policies at issue had, to Mr. Brinley's knowledge, never previously been violated by Mr. Dominguez or any other employee.

Plaintiff's suggestion that Mr. Dominguez' violation of Brinley's Grading's policies, standing alone, constitutes evidence of Mr. Brinley's negligent implementation of safety procedures is insufficient. *See B. B. Walker Co.*, 108 N.C. App. at 567, 424 S.E.2d at 175 (rejecting plaintiff's argument that, had employees of defendant been properly or adequately supervised, their thefts of plaintiff's property could have been prevented because it amounted to "no more than speculation" that because defendant failed to adequately supervise the employees, it was negligent).

Because there was no showing that Mr. Brinley "should have reasonably foreseen that more supervision was required" to prevent Mr. Dominguez' deliberate violation of company policy, plaintiff has failed to show any negligence by Mr. Brinley. *Id.* The trial court did not err in granting summary judgment as to plaintiff's claims against Mr. Brinley.

Affirmed in part, reversed in part.

Chief Judge MARTIN and Judge STROUD concur.